UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BROWN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF<br>　CORRECTIONS, et al.,<br><br>　　　　　Defendants. | CV F- 04- 5215 REC DLB P<br><br>FINDINGS AND<br>RECOMMENDATION RE<br>DISMISSAL OF ACTION FOR<br>FAILURE TO STATE A CLAIM |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. section 1983. On October 22, 2004, this Court entered an order dismissing the complaint for failure to state a claim and granting plaintiff leave to file an amended complaint. The order was returned to the Court with notice that the CDC number on file with the court was incorrect. The Court reserved the Order. Plaintiff requested an extension of time and on March 18, 2005, plaintiff filed a response to the Order dismissing his complaint. In his response, plaintiff states that he is attempting to obtain counsel to represent him in this action. To the extent plaintiff seeks appointment of counsel by this Court, by separate order, the Court denies this request. Plaintiff also states that he elects to stand by his original complaint and does not wish to file an amended complaint. Accordingly, the Court now issues a recommendation to dismiss the complaint for

failure to state a claim.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc).

In the instant case, plaintiff brings action against the California Department of Corrections ("CDC"); CDC Director Edward Alameida; Warden Allen Scribner; the following CDC doctors: Dr. Klarich, Dr. Bhatt, Dr. Hasadsri, Dr. Friedman, Dr. Viravathana, Dr. Thirakomen, Dr. Kim; and Correctional Officer Miranda. Plaintiff alleges that defendants have denied him a wheelchair and appropriate institutional placement and housing in violation of the Americans with Disabilities Act; committed deliberate indifference to his serious medical needs, resulting in further significant injury in violation of the Eighth and Fourteenth Amendments; violated his right to privacy with regard to his medical diagnosis and treatment resulting in embarrassment, humiliation and emotional distress; retaliated against him for filing and pursuing administrative remedies; committed medical malpractice; and conspired to injure plaintiff and to deprive him of his constitutional rights.

Plaintiff alleges that he is substantially impaired in his ability to walk, see and work as a result of multiple serious medical conditions and injuries. On April 6, 1992, plaintiff was classified as permanently disabled and unable to work due to significant degenerative intervertible spinal disk disease. This record was placed in plaintiff's prison medical file.

Plaintiff alleges that he was the victim of an attempted murder on February 8, 2001 and thereafter was transferred to the Medical Center at UC Davis. Plaintiff was transferred back to California State Prison at Sacramento on February 12, 2001 and was transferred to California State Prison Corcoran in July 2001. On March 29, 2002, plaintiff alleges that defendant Dr. Hasadsri

denied plaintiff's CDC 1824 request for a wheelchair, which was approved by Dr. Bhatt.

Plaintiff further alleges that on June 5, 2002 he was seen by Dr. Viravathana for back and neck pain and Dr. Viravathana did not assess plaintiff's vital signs or conduct a physical examination. Plaintiff alleges that defendant prescribed and ordered medications without informing plaintiff or advising of the potential risks or side effects.

On August 7, 2002, plaintiff was seen by Dr. Friedman for back and neck pain. Plaintiff alleges that Dr. Friedman recommended "trigger point" injections, antidepressants and anti-inflamatory drugs despite plaintiff's history of heart disease, hypertension and a brain tumor.

Plaintiff alleges that on September 3, 2002, defendant Miranda escorted him to the medical clinic and while he was in the examination room with defendant Dr. Thirakomen, defendant Miranda and other inmates were seated outside the examination room where they could clearly hear the discussion. Plaintiff alleges that defendant Miranda participated in and allowed other inmates to make derogatory comments about plaintiff's medical condition.

Plaintiff alleges that on February 24, 2003, he was seen by defendant Dr. Kim for complaints of severe pain. Plaintiff alleges Dr. Kim laughed at his complaints, conducted a cursory examination and discounted his condition. Plaintiff alleges that on April 25, 2003, he again saw Dr. Kim with complaints of frequent urination and severe pain in his groin area. Plaintiff alleges Dr. Kim failed to order laboratory tests to determine plaintiff's prostrate specific antigen level and failed to make any attempt to rule out kidney stones despite plaintiff's having informed him of a history of passing kidney stones. Plaintiff alleges that on May 1, 2003, he again saw Dr. Kim and gave him a large kidney stone that he had passed that morning. Plaintiff alleges Dr. Kim expressed disbelief that the stone had actually come from plaintiff's body but that he would submit it for testing. Plaintiff asserts Dr. Kim refused to answer questions and was "very rude and abrupt . . . "

Plaintiff alleges that on June 4, 2003, Dr. Kim completed and signed an Inmate/Parolee Disability Verification in which he improperly stated plaintiff had no verifiable disability

I.  ADA Claim

Plaintiff alleges that defendants violated his rights under the Americans with Disabilities Act

(ADA) by failing to provide him a wheelchair and failing accommodate his disabilities in his institutional housing. Title II of the Americans with Disabilities Act provides that:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Because Title II of the ADA was modeled after § 504 of the Rehabilitation Act of 1973, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." Zukle v. Regents of the University of California, 166 F.3d 1041, 1045, n. 11 (9th Cir. 1999). To establish a claim under the ADA and RA, plaintiff must demonstrate that (1) he is a person with a disability; (2) that he is otherwise qualified; and that the defendants' actions either (3) excluded his participation or denied him the benefits of a service, program, or activity; or (4) otherwise subjected him to discrimination on the basis of his physical handicap. See Duffy v. Riveland, 98 F.3d 477, 455 (9th Cir. 1996).

The term "public entity" is defined under Title II as any state or local government or any department, agency, or other instrumentality of state or local government. 42 U.S.C. § 12131(1)(A), (B). Individuals are not proper defendants under Title II of the ADA. Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999); Montez v. Romer, 32 F. Supp. 2d 1235, 1240-41 (D. Colo. 1999) (finding that individual liability does not exist under the ADA); see also Butler v. City of Prairie Village, 172 F.3d 736, 744 (10th Cir. 1999); Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996); Gallo v. Bd. of Regents of the University of California, 916 F. Supp. 1005, 1009 (S.D. Cal. 1995). In the instant case, plaintiff sues the individual defendants in their official and individual capacities. Because plaintiff cannot maintain an action against individuals under Title II of the ADA, the ADA claims against defendants in their individual capacities must be dismissed.

II.  Deliberate Indifference to Medical Needs

Plaintiff asserts that defendants were deliberately indifferent to his serious medical needs. A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment

unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer v. Brennan, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Id.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle v. Gamble, 429 U.S. at 104-05. However, where a prisoner alleges a delay in receiving medical treatment, the prisoner must allege that the delay led to further injury. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Techs, Inc. v. Miller, 104 F.3d 1133,

U.S. District Court
E. D. California

5

1136 (9th Cir. 1997); Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

In the instant case, plaintiff does not state a claim against any named defendant for deliberate indifference to medical needs.  Although plaintiff alleges that defendants did not provide adequate medical care, the allegations do not rise to the level of deliberate indifference.  Plaintiff's disagreement with the doctors recommended treatment does not constitute deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Plaintiff alleges that on June 5, 2002, he was seen by Dr. Viravathana, the specialist in neurology who prescribed two forms of insulin for plaintiff.  On August 7, 2002, plaintiff was seen by Dr. Friedman who recommended "trigger point" injections, antidepressants and anti-inflamatory drops.  On September 3, 2002, plaintiff was seen by Dr. Thirakomen.  On February 24, 2003, April 25, 2003 and May 1, 2003 plaintiff was seen by Dr. Kim.  Although plaintiff disagrees with the course of treatment provided by these doctors, these allegations do not indicate a deliberate indifference to plaintiff's medical needs, but rather, indicate that plaintiff's health issues were addressed by prison staff.  Therefore, the complaint fails to state an Eighth Amendment claim for deliberate indifference to medical needs against any of the named defendants.

To the extent plaintiff claims that his administrative appeals were improperly denied by defendant Bhatt and "CDC inmate appeals branch staff on behalf of the Director of CDC, defendant Alameida . . ."  These claims also fail.  Prisoners have no constitutional right to an inmate grievance system.  Olim v. Wakinekona, 461 U.S. 238, 249 (1983).  Thus, the non-existence of, or the failure of prison officials to properly implement an administrative appeals process within the prison system does not raise constitutional concerns.  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley, 997 F.2d at 495 (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982); see also Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10;

Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Specifically, failure to process a grievance does not state a constitutional violation. Buckley, 997 F.2d at 495. Thus, a prison official's involvement and actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

III.  Violation of Medical Privacy

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law.[1] Wolff v. McDonnell, 418 U.S. 539, 556 (1974). "While the Supreme Court has expressed uncertainty regarding the precise bounds of the constitutional 'zone of privacy,' its existence is firmly established." In re Crawford, 194 F.3d 954, 958 (9th Cir. 1999). "The constitutionally protected privacy interest in avoiding the disclosure of personal matters clearly encompasses medical information and its confidentiality," Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1269 (9th Cir. 1998), and "information regarding an individual's HIV-status or AIDS diagnosis . . . fall[s] with the ambit of the privacy protection afforded medical information." Doe v. Attorney General of the United States, 941 F.2d 780, 796 (9th Cir. 1991).

Section 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." Daniels v. Williams, 474 U.S. 327, 330 (1986); Maddox v. City of Los Angeles, 792 F.2d 1408, 1414 (9th Cir. 1986). Depending on the right, mere negligence may or may not be enough to state a claim under section 1983. Daniels, 474 U.S. at 330; Maddox, 792 F.2d at 1413. The protections of the Due Process Clause are not "triggered by lack of due care by prison officials." Daniels, 474 U.S. at 333; Maddox, 792 F.2d at 1413. Thus, although some constitutional provisions may be violated by mere lack of care, negligent conduct does not state a claim under section 1983 for violation of the Due Process Clause of the Fourteenth Amendment. Daniels, 474 U.S. at 334; Maddox, 792 F.2d at 1413.

---

[1] The right to privacy has been found to fall under the protection of the Due Process Clause and/or the Fourth Amendment, which protects against unreasonable searches and seizures. See Whalen v. Roe, 429 U.S. 589, 598 n.23 (1977); Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F3d 1260, 1269 (9th Cir. 1998); Roe v. Sherry, 91 F.3d 1270, 1274 (9th Cir. 1996); Doe v. Attorney General of the United States, 941 F.2d 780, 795 (9th Cir. 1991). Because plaintiff has alleged no facts that implicate the Fourth Amendment, the court construes plaintiff's claim to be one brought pursuant to the Due Process Clause.

The conduct of correctional officer Miranda and Dr. Thirakomen described by plaintiff as "the failure to provide for and ensure plaintiff's medical privacy . . ." was negligent conduct at most and does not state a claim under section 1983. Moreover, mere verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Therefore, plaintiff's allegations of suffering "extreme embarrassment, humiliation, and emotional and mental distress" also do not state a claim under section 1983.

IV.  Retaliation

Plaintiff asserts that he was subjected to intentional deprivation of necessary and appropriate medical care in retaliation for filing and pursuing administrative remedies relevant to his medical care. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989). To establish a prima facie case, plaintiff must allege and show that defendants acted to retaliate for his exercise of a protected activity, and defendants' actions did not serve a legitimate penological purpose. See Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action). McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). The prisoner must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. Pratt, 65 F.3d at 806.

In the instant case, plaintiff has alleged no facts to indicate that he was denied necessary and appropriate medical care. Although plaintiff alleges that he filed several inmate appeal concerning medical treatment, he has failed to allege sufficient facts to establish that he was denied medical care. As discussed above, plaintiff's allegations reveal the opposite. Plaintiff's disagreement with the course of treatment he was given does not state a claim for retaliation, or for deliberate

indifference.

V.  State Law Medical Malpractice

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Although the court can exercise supplemental jurisdiction over state law claims, plaintiff must first have a cognizable claim under federal law. In the event that plaintiff is able to allege a cognizable federal claim and wishes to pursue a state law claim as well, plaintiff is informed that the California Tort Claims Act requires that tort claims against a public entities or its employees be presented to the State Board of Control no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 945.4, 950-950.6. To state a tort claim against a public employee, the plaintiff must allege compliance with the Tort Claims Act. Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995) (citing Snipes v. City of Bakersfield, 145 Cal.App.3d 861, 193 CalRptr. 760, 762 (Cal.App. 1983)); McQuoid v. Rubin, No. S-97-0325 MLS PAN, 1997 WL 1037884, *4 (E.D. Cal. 1997).

VI.  Supervisory Liability

To the extent that plaintiff wishes to impose liability on defendant Alameida, the Director of CDC and Warden Scribner, plaintiff is informed that supervisory personnel such as defendants Alameida and Scribner are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v.

Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To show a prima facie case of supervisory liability, plaintiff must allege facts indicating that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be alleged to support claims under Section 1983.  See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

VI.  Conclusion

In summary, the Court RECOMMENDS that the complaint be dismissed in its entirety for failure to state a claim.  Plaintiff has advised that he does not wish to file an amended complaint and therefore the Court recommends that this action be dismissed in its entirety.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 3, 2005**            /s/ Dennis L. Beck
3c0hj8                                UNITED STATES MAGISTRATE JUDGE