1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BROWN, | CASE NO. 1:04-cv-5215-LJO DLB PC |
|         Plaintiff, | FINDINGS AND RECOMMENDATIONS RE DEFENDANTS' MOTION FOR SUMMARY |
|    v. | JUDGMENT |
| CDC, et al., | (Doc. 75) |
|         Defendants. | |

_____/

Plaintiff is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint filed October 22, 2004 against defendants in their official capacties for violation of the Americans with Disabilties Act ("ADA") and medical malpractice. Plaintiff alleges that defendants violated his rights under the ADA by failing to provide a wheelchair and failing to accommodate his disabilties in institutional housing. Plaintiff also claims that defendants Viravathana, Friedman and Kim's treatment of his chronic pain constituted medical malpractice. On May 11, 2007, defendants filed a motion for summary judgment. Plaintiff filed an opposition on July 16, 2007.

B.   <u>Legal Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on

1

file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the

pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
*Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c).
The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable
inferences that may be drawn from the facts placed before the court must be drawn in favor of the
opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655
(1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing
party's obligation to produce a factual predicate from which the inference may be drawn. *Richards
v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th
Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show
that there is some metaphysical doubt as to the material facts. Where the record taken as a whole
could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted).

C        Undisputed Facts

1.      Plaintiff is a California state prisoner serving a term of life without the possibility of
         parole for first degree murder and conspiracy to commit murder with special
         circumstances in violation of Penal Code Section 187 and 190.2 and solicitation of
         murder in violation of Penal Code Section 653f(b).

2.      On April 6, 1992, a doctor issued a medical chrono that plaintiff was totally disabled
         for purposed of participation in the inmate work/training program and that this
         disability was permanent. The chrono was limited to work assignments and did not
         state that plaintiff was mobility impaired and in need of any assistive device to help
         him walk.

3.      Plaintiff's disability status was reviewed in subsequent years and through 1999,
         physicians continued to find that he was disabled for purposes of work assignments

but did not find that he was in need of an assistive device to help him walk.

4.     On November 7, 2000, Dr. Mitchell updated plaintiff's disability verification and noted that he was mobility impaired because he could not walk 100 yards or up a flight of stairs without pausing with the use of aids (crutches, prothesis, or walker). Dr. Mitchell approved a lower bunk and use of a cane.  Plaintiff was interviewed a week later and stated that these accommodations were adequate.

5.     A month later a doctor wrote a medical chrono, noting plaintiff had multiple medical conditions, including diabetes with Kimmelstiel-Wilson syndrome, which caused him problems with mobility and vision and impacted his placement.

6.     On August 1, 2001, a classification committee referred plaintiff to a doctor for an update on his disability verification, noting that he used a cane and required lower bunk/lower tier housing.

7.     In February 2002, a neurologist diagnosed lumbar-spinal disc herniation and referred plaintiff to a neurosurgeon for consultation.

8.     On February 28, 2002, plaintiff complained that he could not walk or stand for long periods or distances, could not sit on hard surfaces without pain and difficulty and could not use a cane or walker because of other injuries.  As a result, plaintiff claimed he could not go to the recreation yard or move outside his housing unit.  Plaintiff asked for a wheelchair to use going from his cell to the recreation yard and other areas of the prison.

9.     About three weeks later, Dr. Mensink, a consulting neurosurgeon, saw plaintiff and noted that he was obese at 5'10" tall with a weight of 225.  Plaintiff complained that he had severe low back pain, 24 hours a day, seven days a week, and that his right leg. had been "dead" for 20 years.  Plaintiff asked Dr. Mensink to order a wheelchair and narcotic medications.  Following examination and review of MRI's, Dr. Mensink's diagnosis was obesity; hypertension; lumbar mechanical low back pain, for which radiculopathy should be ruled out; and cervical disc disease. He recommended weight loss, flexion-extension X-rays of the lumbar spine, lumbar epidurals and high dose

4

nonsteroidal anti-inflammatory medications.  Dr. Mensink did not recommend use of narcotic medications or a wheelchair.

10.    On March 29, 2002, Dr. Hasasdri denied plaintiff's request for a wheelchair as a disability accommodation request, stating that physicians had not found physical abnormalities that required use of a wheelchair.

11.    Dr. Hasasdri saw plaintiff on June 24, 2002 for follow-up on his hypertension and back pain and noted that he ambulated without difficulty.

12.    In late May 2003, staff in the Pain Management Clinic noted that plaintiff walked into the clinic without use of a cane or wheelchair and in no apparent distress.

13.    In a disability verification form dated, June 4, 2003, Dr. Kim stated that plaintiff's disability was not verified.  He stated there was no objective evidence that plaintiff had an ambulatory dysfunction or impairment of vision.

14.    In June 2003, Dr. Hasasdri noted that plaintiff walked without difficulty.

15.    On July 21, 2003, plaintiff requested an accommodation, claiming that Dr. Kim's June 2003 finding that he did not have a verifiable disability or ambulatory dysfunction was false and should be removed from the medical file.  Dr. Hasasdri responded on August 8, stating that doctors had not noted his mobility impairment in the medical records, that plaintiff was observed that day walking without difficulty and that the disability form prepared by Dr. Kim would not be removed from the file.  Plaintiff's appeal was denied on that ground that, since the November 2000 finding that he was mobility-impaired in the lower extremities, medical staff had not noted difficulty walking.

16.    In June 2005, a doctor provided a medical chrono for a cane for six months, with evaluation by a doctor 30 days before the chrono expired.

17.    A note in plaintiff's chart dated approximately three months later states that plaintiff had a steady ambulatory gait without an assistive device and had been observed walking across the yard without the assistive device, with a steady, swift gait.

18.    In October 2005, another doctor signed a Comprehensive Accommodation Chrono that plaintiff was to have barrier free/wheelchair accessible housing and a ground floor

cell for one year, back brace with lumbar support, a cane and a wheelchair for one year. The chrono also imposed physical limitations on job assignments of no lifting more than five pounds and no walking more than 100 feet and no standing more than 15 minutes.

19.     On November 25, 2005, plaintiff complained that it was difficult and painful for him to walk from his housing unit in Facility 4A to the Acute Care Hospital for his medical appointments. He asked to be provided some kind of wheeled transportation to the appointment. Staff verified that plaintiff had a disability verification that limited the distance he could walk. Plaintiff was told that he would not be assigned a wheelchair for full time use, but that when he was to be escorted distance beyond his walking limitations, staff would obtain an appropriate assistive device for his temporary use. Dr. Hasadsri approved a disability verification for a cane and intermittent use of a wheelchair.

20.     In November 2006, plaintiff was noted to be disabled and an intermittent wheelchair user.

E.     Discussion

     1.     **Claims against Defendants in their Official Capacities.**

          Citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001), defendants argue the Title II claims against defendants Alameida, Scribner, Bhatt, Friedman, Kim, Hasadsri, Miranda, Thirakomen and Viravathana in their official capacities should be dismissed because their employer, California Department of Corrections and Rehabilitation, is also a defendant and is liable under Title II as a public entity for the discriminatory acts of its employees.

          In *Duvall*, a hearing impaired litigant sued a state court judge, the county and county officials alleging they violated the ADA by refusing to provide real time transcription of hearings held during his marriage dissolution proceedings. The court found that factual issues precluded summary judgment for the county and county officials on plaintiff's ADA claims. In doing so, the court stated:

          Duvall sues the County directly under the ADA and the
          Rehabilitation Act, and also indirectly, under 42 U.S.C. § 1983.
          When a plaintiff brings a direct suit under either the Rehabilitation

Act or Title II of the ADA against a municipality (including a county), the public entity is liable for the vicarious acts of its employees. We have held that, under § 504 of the Rehabilitation Act (upon which the ADA was explicitly modeled), we apply the doctrine of *respondeat superior* to claims brought directly under the statute, in part because the historical justification for exempting municipalities from *respondeat superior* liability does not apply to the Rehabilitation Act, and in part because the doctrine "would be entirely consistent with the policy of that statute, which is to eliminate discrimination against the handicapped." *Bonner,* 857 F.2d at 566-567. These same considerations apply to Title II of the ADA. *See Zukle,* 166 F.3d at 1045 n. 11 (holding that, under 42 U.S.C. 12133, the "remedies, procedures, and rights" available under Title II of the ADA are equivalent to those available under § 504). The County is therefore vicariously liable for the actions of the two County employees, Razey and Richardson.

The Court rejects defendants' argument that because CDCR is vicariously liable for the discriminatory acts of its employees, the individual defendants should be dismissed.  Suing defendants in their officals capacities is an alternative way of pleading an action against the entity; however, defendants have provided no authority suggesting that plaintiff cannot name both the individual defendants in their official capacity and the public entity.

## 2.   **ADA Claim for Punitive Damages**

Defendants argue that plaintiff's claim for punitive damages must be dismissed because punitive damages are not available under Title II of the ADA.

In *Barnes v. Gorman*, 536 U.S. 181, 189-190 (2002), the Court held that because punitive damages may not be awarded in private suits brought under the Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and §504 of the Rehabilitation Act.  Plaintiff's claim for punitive damages must therefore be dismissed.

## 3.   **Plaintiff's ADA Claim for Compensatory Damages**

Defendants argue plaintiff is not entitled to compensatory damages on is ADA claim because they were not deliberately indifferent to plaintiff's needs.  Defendants contend that plaintiff cannot show that CDCR physicians denied him full-time use of a wheelchair to discriminate him because of his disability.

Plaintiff argues defendants were deliberately indifferent to his needs because CDCR did

7

not provide or furnish a reasonable accommodation to him until Dr. Reynolds examined him and verified his serious medical needs in 2005.  DUF 18, 19.

In *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001), the Ninth Circuit stated that "[t]o recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall*, at 1138 (citing *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998)(footnote omitted)).   The Court held that deliberate indifference is the appropriate standard to use in determining whether intentional discrimination occurred. *Id.* "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." Id. at 1138 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).  In order to meet the second element of the deliberate indifference test, a failure to act must be the result of conduct that is more than negligent and involves an element of deliberateness. *Id.* at 1139.

Here, it is undisputed that defendants had notice of plaintiff's request for accommodation in that they agree that plaintiff's request for a wheelchair was denied.  DUF 15, 16.  Defendants present evidence, which plaintiff does not dispute, that in February 2002, a neurologist diagnosed lumbar-spinal disc herniation and referred plaintiff to a neurosurgeon for consultation.  DUF 7.  In March 2002, Dr. Mensink, a consulting neurosurgeon saw plaintiff.  DUF 9.  Following examination and review of MRI's, Dr. Mensink's diagnosis was obesity; hypertension; lumbar mechanical low back pain, for which radiculopathy should be ruled out; and cervical disc disease. *Id*.  He recommended weight loss, flexion-extension x-rays of the lumbar spine, lumbar epidurals and high dose nonsteroidal anti-inflammatory medications. *Id.*  Dr. Mensink did not recommend use of narcotic medication or a wheelchair. *Id.*  Consequently, on March 29, 2002, Dr. Hasadsri denied plaintiff's request for a wheelchair stating that Dr. Mensink and other physicians who had seen him, had not found physical abnormalities that required use of a wheelchair.  DUF 10.

The evidence does not demonstrate deliberate indifference but rather plaintiff's disagreement with the treatment provided to him by defendants, including defendants' failure to provide plaintiff with a wheelchair.  Defendants did not ignore plaintiff's condition nor his

request.  The record reveals that plaintiff was treated by numerous doctors and his health issues were addressed by prison staff, although plaintiff was not happy with the results.  Plaintiff's disagreement with the treatment he was provided does not constitute deliberate indifference.  Plaintiff's own lay opinion that the treatment provided by defendants was inadequate is insufficient to defeat defendants' motion for summary judgment.  Further, a difference of opinion between medical personnel regarding treatment does not amount to deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

There is no evidence of intentional discrimination and defendants are entitled to  judgment as a matter on law on the issue of compensatory damages.

### 4.      Retaliation Under Section 12203

Defendants move for summary judgment on plaintiff's retaliation claim.  However, this claim was dismissed by the court's prior order.  *See* Document Nos. 15, 16 and 18.

### 5.      State Law Claim

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c).  "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary."  Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."  United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

In the instant case, the court has found that defendants are entitled to summary adjudication on all of plaintiff's federal claims against them, and the court has recommended that defendants' motion for summary adjudication on these claims be granted.  As a result, the only

claims left in this action are state law medical malpractice claims.  The court therefore

recommends that the court decline to exercise supplemental jurisdiction over plaintiff's state law

claims, and that the claims be dismissed from this action, without prejudice.

F.     Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendants' motion for

summary judgment, filed May 11, 2007, be GRANTED IN PART AND DENIED IN PART as

follows:

1.     Defendants' motion for summary adjudication on plaintiff's ADA claims against

the defendants in their official capacity be DENIED;

2.     Defendants' motion for summary adjudication on plaintiff's claims for punitive

damages as to his ADA claim be GRANTED;

3.     Defendants' motion for summary adjudication on plaintiff's compensatory damage

claims as to his ADA claim be GRANTED; and

4.     The Court recommends to decline the exercise of supplemental jurisdiction over

plaintiff's state law claims, and that the claims be dismissed from this action,

without prejudice.

These Findings and Recommendations will be submitted to the United States District

Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

**fifteen (15) days** after being served with these Findings and Recommendations, the parties may

file written objections with the court.  The document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

objections within the specified time may waive the right to appeal the District Court's order.

Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 10, 2008**              **/s/ Dennis L. Beck**
                                         UNITED STATES MAGISTRATE JUDGE